[No. F037946. Fifth Dist. Nov. 8, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND T. PADILLA, Defendant and Appellant.

COUNSEL

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Stan Cross and Patrick J. Whalen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GOMES, J.**—In a murder prosecution, is evidence of a hallucination admissible at the guilt phase to reduce first degree murder to second degree murder or to mitigate murder to voluntary manslaughter? We hold that evidence of a hallucination—a perception with no objective reality—is inadmissible to negate malice so as to mitigate murder to voluntary manslaughter but is admissible to negate deliberation and premeditation so as to reduce first degree murder to second degree murder.

### FACTUAL AND PROCEDURAL HISTORY[1]

Shortly after an early morning prisoner count, correctional officers at Wasco State Prison who saw blood on inmate Raymond T. Padilla's face, hands, and jumpsuit found his cellmate Raymond Loya dead. Loya had deep penetrating stab wounds to each of his eyes. One wound was forceful enough to fracture the supraorbital plate at the top of his eye socket and to induce a subarachnoid hemorrhage by tearing the membranes around the brain. Loya was still alive when he suffered those wounds. The towel around his neck not only fractured the bones in his voice box and strangled him to death but also was so tightly wrapped that coroner's office personnel had trouble removing the towel to perform the autopsy.

At the guilt phase of his first degree murder trial, Padilla sought to admit the testimony of two psychologists that he committed a retaliatory homicide after hallucinating that Loya had killed Padilla's father and brothers. The court allowed him to admit that evidence at the sanity phase but not at the guilt phase. A jury found him guilty of first degree murder (Pen. Code,[2] § 187, subd. (a)), found a strike prior true (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)), and found him sane (§§ 25, subd. (b), 1016, subd. 6, 1017, subd. 5, 1026).

### DISCUSSION

The sole issue on appeal arises out of the court's denial of Padilla's motion in limine to present at the guilt phase the testimony of two psychologists who later testified at the sanity phase. Padilla argues that the court's

---

[1]Other relevant facts appear in the discussion of the issue on appeal.

[2]Statutory references not otherwise noted are to the Penal Code.

denial of the motion constitutes a prejudicial state law evidentiary error (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; Cal. Const., art. VI, § 13) and a prejudicial denial of his federal constitutional rights to due process and trial by jury (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]; U.S. Const., 6th & 14th Amends.). The Attorney General argues that the "court's reason for excluding the evidence was less than clear" but that nonetheless the "court correctly excluded the evidence" and that even if the court erred, the error was harmless.[3]

The foundation of Padilla's argument was his proffer of the testimony of two psychologists who later testified at the sanity phase. One could have testified at the guilt phase that Padilla hallucinated that Loya had killed his father and brothers. The other could have testified at the guilt phase about the concept of hallucination as provocation. That evidence, he argues, could have led to a second degree murder verdict or to a voluntary manslaughter verdict.

■ The test of whether provocation or heat of passion can negate malice so as to mitigate murder to voluntary manslaughter is objective. (*People v. Steele* (2002) 27 Cal.4th 1230, 1254 [120 Cal.Rptr.2d 432, 47 P.3d 225]; *People v. Wickersham* (1982) 32 Cal.3d 307, 326 [185 Cal.Rptr. 436, 650 P.2d 311], disapproved on another ground in *People v. Barton* (1995) 12 Cal.4th 186, 201 [47 Cal.Rptr.2d 569, 906 P.2d 531].) "[N]o defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless . . . the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable [person]." (*People v. Logan* (1917) 175 Cal. 45, 49 [164 P. 1121].) The test of whether provocation or heat of passion can negate deliberation and premeditation so as to reduce first degree murder to second degree murder, on the other hand, is subjective. (*People v. Fitzpatrick* (1992) 2 Cal.App.4th 1285, 1295 [3 Cal.Rptr.2d 808]; *People v. Valentine* (1946) 28 Cal.2d 121, 131-135 [169 P.2d 1].) "If this were not so, the provocation would be a *defense* to murder and would be sufficient to reduce the crime to manslaughter." (*Fitzpatrick*, at p. 1295.)

■ A hallucination is a perception with no objective reality. (American Heritage Dict. (4th ed. 2000) p. 792 ["[p]erception of visual, auditory, tactile, olfactory, or gustatory experiences *without an external stimulus*"

---

[3]The Attorney General argues, too, that the absence of evidence of imminent peril makes Padilla's proffer of evidence about his hallucination irrelevant to the defense of imperfect self-defense. Padilla expressly disavowed that defense both at trial and on appeal, however, so we need not address that argument.

(italics added)]; Oxford English Dict. (2d ed. 1989) p. 1047 ["apparent perception (usually by sight or hearing) of an external object *when no such object is actually present*" (italics added)]; Webster's 3d New Internat. Dict. (1986) p. 1023 ["perception of objects *with no reality*" (italics added)].) A perception with no objective reality cannot arouse the passions of the ordinarily reasonable person. (See *People v. Gregory* (2002) 101 Cal.App.4th 1149, 1170-1178 [124 Cal.Rptr.2d 776] [a delusion cannot mitigate murder to nonstatutory voluntary manslaughter on a theory of imperfect self-defense since the belief in the need to use deadly force does not arise from objective reality].) Failing the objective test, Padilla's hallucination cannot as a matter of law negate malice so as to mitigate murder to voluntary manslaughter—whether on a "sudden quarrel or heat of passion" theory of statutory voluntary manslaughter (§ 192, subd. (a);[4] *People v. Saille* (1991) 54 Cal.3d 1103, 1114 [2 Cal.Rptr.2d 364, 820 P.2d 588]) or on a "diminished actuality" theory of nonstatutory voluntary manslaughter (see § 28, subd. (a);[5] *People v. Hernandez* (2000) 22 Cal.4th 512, 520 [93 Cal.Rptr.2d 509, 994 P.2d 354]). (See *People v. Steele, supra,* 27 Cal.4th at p. 1254; *People v. Wickersham, supra,* 32 Cal.3d at p. 326.)

On the other hand, nothing in the law necessarily precludes Padilla's hallucination from negating deliberation and premeditation so as to reduce first degree murder to second degree murder, as that test is subjective. (See *People v. Fitzpatrick, supra,* 2 Cal.App.4th at p. 1295; *People v. Valentine, supra,* 28 Cal.2d at pp. 131-135.) On that ground, we hold that the court's order rejecting his proffer of evidence was error. The jury had no other evidence about his hallucination at the guilt phase. As the evidence he proffered could well have persuaded the jury to find that his hallucination provoked a heat of passion in which he committed not a first degree murder but a second degree murder, a more favorable result was reasonably probable in the absence of the error, which we cannot declare harmless beyond a reasonable doubt. (*Chapman v. California, supra,* 386 U.S. at p. 24 [87 S.Ct. at p. 828]; *People v. Watson, supra,* 46 Cal.2d at p. 836; U.S. Const., 6th & 14th Amends.; Cal. Const., art. VI, § 13.)

■  Necessarily implicit in Padilla's argument is the premise that with evidence about his hallucination in the record of the guilt phase, the jury could have found him guilty of second degree murder. On that record, we

---

[4]Section 192, subdivision (a) provides: "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds: [¶] (a) Voluntary—upon a sudden quarrel or heat of passion."

[5]Section 28, subdivision (a) provides in part: ". . . Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged."

find the prejudice of the evidentiary error addressable by a retrial on the charge of first degree murder to enable Padilla to attempt with that evidence to negate deliberation and premeditation so as to reduce first degree murder to second degree murder. (See *People v. Rojas* (1961) 55 Cal.2d 252, 254 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252]; *People v. Bender* (1945) 27 Cal.2d 164, 186-187 [163 P.2d 8], overruled on another ground in *People v. Lasko* (2000) 23 Cal.4th 101, 110 [96 Cal.Rptr.2d 441, 999 P.2d 666].)

## DISPOSITION

We vacate the judgment of conviction of first degree murder and remand the matter to the trial court with directions. If the prosecutor files a written election to try Padilla on a charge of first degree murder within 60 days after the filing of the remittitur in the trial court and if Padilla is "brought to trial within 60 days . . . after the filing of the remittitur in the trial court," the trial court shall proceed accordingly. (§ 1382, subd. (a)(2).) Otherwise the trial court shall enter a judgment of conviction of second degree murder and sentence him accordingly. (See *In re Bower* (1985) 38 Cal.3d 865, 880 [215 Cal.Rptr. 267, 700 P.2d 1269].)

Ardaiz, P. J., and Cornell, J., concurred.

A petition for a rehearing was denied December 9, 2002, and appellant's petition for review by the Supreme Court was denied January 22, 2003. Baxter, J., did not participate therein.