[No. F045355. Fifth Dist. Jan. 26, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE LUIS MEJIA-LENARES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published are: the Introduction, part I of the Discussion and the Disposition.

1438

COUNSEL

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Clayton S. Tanaka and Paul A. Bernardino, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ARDAIZ, P. J.—**

### INTRODUCTION*

On April 21, 2003, an information was filed in Kern County Superior Court, charging appellant Jose Luis Mejia-Lenares with murder involving the use of a knife. (Pen. Code,[1] §§ 187, subd. (a), 12022, subd. (b)(1).) A jury subsequently acquitted him of first degree murder, but convicted him of second degree murder and found the knife use allegation to be true. The jury further found him to have been sane at the time he committed the offense. He was sentenced to prison for 15 years to life, enhanced by one year for the knife use, and filed a timely notice of appeal.

In the published portion of this opinion, we hold that so-called imperfect self-defense cannot be based on delusion alone; hence, the trial court did not err in rejecting appellant's requested modification of CALJIC No. 8.73.1. In the unpublished portion of the opinion, we reject appellant's claims of evidentiary error. Accordingly, for the reasons which follow, we affirm the judgment.

### FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISCUSSION

### I*

### IMPERFECT SELF-DEFENSE BASED ON DELUSION

As described at length in an unpublished portion of this opinion, appellant presented evidence that he fatally stabbed Harry Howard out of fear that Howard was transforming into the devil and wanted to kill him. Appellant conceded that he just imagined Howard was turning into the devil, but presented evidence that he was diagnosed near the time of the homicide as suffering from major depression with psychotic features, including delusions.

---

*See footnote, *ante*, page 1437.

[1] All statutory references are to the Penal Code unless otherwise stated.

The trial court instructed the jury on first and second degree murder, as well as manslaughter based on sudden quarrel or heat of passion, or on the actual but unreasonable belief in the need to defend oneself against imminent peril to life or great bodily injury. The court also instructed in the language of CALJIC No. 8.73.1 (evidence of hallucination may be considered in determining degree of murder), to wit: "A hallucination is a perception that has no objective reality. If the evidence establishes that the perpetrator of an unlawful killing suffered from a hallucination which contributed as a cause of the homicide, you should consider that evidence solely on the issue of whether the perpetrator killed with or without deliberation and premeditation." Based on this court's opinion in *People v. Padilla* (2002) 103 Cal.App.4th 675 [126 Cal.Rptr.2d 889] (*Padilla*), the trial court refused appellant's requested modification, which would have instructed jurors also to consider evidence of hallucination on the issue of whether the perpetrator "killed in the actual but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury."[12]

Appellant now says the evidence was sufficient to permit the jury to find that although a reasonable person would not have perceived the circumstances as life-threatening, appellant, because of his mental disease, actually but unreasonably believed Howard was threatening his life and so he needed to defend himself by using lethal force. Accordingly, the argument runs, the trial court erred by refusing the requested modification, and this refusal to instruct on appellant's theory of defense violated his state and federal constitutional rights, and constituted prejudicial error because no other instruction explained the relationship between appellant's mental disorder and unreasonable self-defense.

Appellant acknowledges that in *Padilla, supra,* 103 Cal.App.4th at page 679, this court held: "Failing the objective test, [a defendant's] hallucination cannot as a matter of law negate malice so as to mitigate murder to voluntary manslaughter—whether on a 'sudden quarrel or heat of passion' theory of statutory voluntary manslaughter [citations] or on a 'diminished actuality' theory of nonstatutory voluntary manslaughter [citations]. [Citations.]" (Fns. omitted.) He points out, however, that the opinion dealt solely with manslaughter based on sudden quarrel or heat of passion, as *Padilla* expressly disavowed a defense of imperfect self-defense both at trial and on appeal. (*Id.* at p. 678, fn. 3.) He urges us to find that *Padilla*'s holding does not apply

---

[12] As proposed, appellant's modified instruction read: "A hallucination is a perception that has not [*sic*] objective reality. [¶] If the evidence establishes that the perpetrator of an unlawful killing suffered from a hallucination which contributed as a cause of the homicide, you should consider that evidence on the issues of whether the perpetration [*sic*] killed with or without deliberation or killed in the actual but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury."

within the context now before us. As we will explain, we conclude that imperfect self-defense cannot be based on delusion alone.[13]

█ "California statutes have long separated criminal homicide into two classes, the greater offense of murder and the lesser included offense of manslaughter. The distinguishing feature is that murder includes, but manslaughter lacks, the element of malice. [Citations.] [¶] Malice exists, if at all, only when an unlawful homicide was committed with the 'intention unlawfully to take away the life of a fellow creature' [citation], or with awareness of the danger and a conscious disregard for life [citations]." (*People v. Rios* (2000) 23 Cal.4th 450, 460 [97 Cal.Rptr.2d 512, 2 P.3d 1066], fn. omitted.)

█ "Under the doctrine of imperfect self-defense, when the trier of fact finds that a defendant killed another person because the defendant *actually*, but unreasonably, believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and thus can be convicted of no crime greater than voluntary manslaughter." (*In re Christian S.* (1994) 7 Cal.4th 768, 771 [30 Cal.Rptr.2d 33, 872 P.2d 574] (*Christian S.*); see, e.g., *People v. Flannel* (1979) 25 Cal.3d 668, 674 [160 Cal.Rptr. 84, 603 P.2d 1] (*Flannel*); *People v. Curtis* (1994) 30 Cal.App.4th 1337, 1354 [37 Cal.Rptr.2d 304].) In such a situation, unreasonable or imperfect self-defense is not a true defense, but instead is a shorthand description of one form of voluntary manslaughter, a lesser included offense of murder. (*People v. Barton* (1995) 12 Cal.4th 186, 200–201 [47 Cal.Rptr.2d 569, 906 P.2d 531].) "Accordingly, when a defendant is charged with murder the trial court's duty to instruct sua sponte . . . on unreasonable self-defense is the same as its duty to instruct on any other lesser included offense: this duty arises whenever the evidence is such that a jury could reasonably conclude that the defendant killed the victim in the unreasonable but good faith belief in having to act in self-defense." (*Id.* at p. 201.) Likewise, "[t]he trial court need not give such instructions on request absent substantial evidence to support them. [Citations.]" (*People v. Stitely* (2005) 35 Cal.4th 514, 551 [26 Cal.Rptr.3d 1, 108 P.3d 182].)

Even if it does not inspire confidence, a defendant's testimony constitutes substantial evidence. (*People v. Webster* (1991) 54 Cal.3d 411, 443 [285 Cal.Rptr. 31, 814 P.2d 1273]; *People v. Melton* (1988) 44 Cal.3d 713, 746 [244 Cal.Rptr. 867, 750 P.2d 741].) Accordingly, the trial court here instructed on

---

[13] In. *People v. Wright* (2005) 35 Cal.4th 964 [28 Cal.Rptr.3d 708, 111 P.3d 973], the California Supreme Court granted review to consider whether to extend the doctrine of imperfect self-defense "to a case in which the defendant's actual, though unreasonable, belief in the need to defend himself was based on delusions and/or hallucinations resulting from mental illness or voluntary intoxication, without any objective circumstances suggestive of a threat." (*Id.* at p. 966.) After studying the record in the case, however, the court concluded that it did not need to reach the issue. (*Ibid.*)

the theory of imperfect self-defense based on appellant's testimony that he saw Howard with a knife at the beginning of the incident. It is unclear whether appellant was hallucinating in that regard. In any event, appellant admitted throwing a rock at Howard's head at that point, then running to the kitchen and grabbing a knife. Although appellant's testimony was not clear concerning whether he then returned to the bedroom (where the incident started) or whether Howard followed him outside, appellant admitted that Howard no longer had a knife when appellant began stabbing him. Throughout the incident, appellant testified, Howard appeared to be the devil. By the end of events, however, Howard was not doing anything to appellant, but the devil was now in appellant. Appellant stabbed Howard because he was afraid Howard was the devil and wanted to kill him.

From the foregoing, it is clear that the evidence offered in support of appellant's claim of imperfect self-defense as to the killing itself (as opposed merely to the onset of events) showed that his alleged belief in the need to defend himself from imminent peril arose solely from his mental delusion that Howard was transforming into the devil and wanted to kill him. The issue thus presented is whether a belief that one is in danger of imminent harm, founded upon a delusion alone, can support a claim of imperfect self-defense so that the trial court should have given appellant's requested modification of CALJIC No. 8.73.1.

■ California follows the test of insanity laid down in *M'Naghten's Case* (1843) 8 Eng.Rep. 718, under which the accused must have been "incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense." (§ 25, subd. (b).)[14] It has long been the rule in California that "insanity may not be used as a basis for extending leniency. It is either a complete defense, or none at all. There is no *degree* of insanity which may be established to affect the degree of crime." (*People v. Cordova* (1939) 14 Cal.2d 308, 311 [94 P.2d 40].) Thus, " ' "there is no degree of insanity sufficient to acquit of murder but not of manslaughter." ' " (*People v. Phillips* (1929) 102 Cal.App. 705, 708 [283 P. 821].)

■ At least in part to "ameliorate the law governing criminal responsibility" prescribed by the *M'Naghten* rule (*People v. Nicolaus* (1967) 65 Cal.2d 866, 877 [56 Cal.Rptr. 635, 423 P.2d 787], disapproved on other grounds in *People v. Wetmore* (1978) 22 Cal.3d 318, 323–325 & fn. 5 [149 Cal.Rptr. 265, 583 P.2d 1308]), two separate and independent, although occasionally overlapping, doctrines emerged: diminished capacity and imperfect self-defense (see *People v. Saille* (1991) 54 Cal.3d 1103, 1109–1111 [2

---

[14] The test is in the disjunctive, despite the literal wording of the statute. (*People v. Skinner* (1985) 39 Cal.3d 765, 769 [217 Cal.Rptr. 685, 704 P.2d 752].)

Cal.Rptr.2d 364, 820 P.2d 588] (*Saille*) [reviewing history of diminished capacity doctrine]; *Flannel, supra,* 25 Cal.3d at pp. 675–677 [reviewing history of imperfect self-defense doctrine]). Under the diminished capacity doctrine, "evidence of diminished mental capacity, whether caused by intoxication, trauma, or disease, [could] be used to show that a defendant did not have a specific mental state [including malice] essential to an offense." (*People v. Conley* (1966) 64 Cal.2d 310, 316 [49 Cal.Rptr. 815, 411 P.2d 911].) Under the doctrine of imperfect self-defense, as previously described, a defendant can seek to negate malice by introducing evidence that he or she actually, albeit unreasonably, believed it was necessary to defend himself or herself from imminent peril to life or great bodily injury. (*Flannel, supra,* 25 Cal.3d at p. 674.)

For the most part, the cases construing these doctrines distinguish, at least implicitly, between absence of a specific state of mind due to mental disease or defect (diminished capacity) and unreasonable belief in a state of facts (imperfect self-defense). (Compare diminished capacity cases such as *People v. Wetmore, supra,* 22 Cal.3d at pp. 321–324 [defendant's evidence, establishing he entered apartment under delusion he owned it, admissible at guilt phase to show he lacked specific intent necessary for burglary, despite the fact such evidence was also probative of insanity]; *People v. Poddar* (1974) 10 Cal.3d 750, 758–760 [111 Cal.Rptr. 910, 518 P.2d 342] [defendant was paranoid schizophrenic; in context of implied malice, defendant, even if aware of duty to act in accordance with law, must also be able to act in accordance with that duty]; *People v. Nicolaus, supra,* 65 Cal.2d at p. 877 [defendant, who had long-standing mental problems, decided to bring his children to an extreme state of happiness and kill them; if defendant was legally sane but suffered from a mental illness that prevented his acting with malice aforethought or premeditation and deliberation, he could not be convicted of first degree murder]; *People v. Conley, supra,* 64 Cal.2d at pp. 318, 322 [defendant was intoxicated; malice aforethought can be negated by showing person who intentionally killed was incapable of harboring malice due to mental disease or defect or intoxication, as mental component of malice requires that defendant be aware of obligation to act within the law]; *People v. Gorshen* (1959) 51 Cal.2d 716, 726–727, 731–733 [336 P.2d 492], disapproved on other grounds in *People v. Lasko* (2000) 23 Cal.4th 101, 110 [96 Cal.Rptr.2d 441, 999 P.2d 666] and *People v. Wetmore, supra,* 22 Cal.3d at pp. 323–325 & fn. 5 [defendant was intoxicated and suffering from mental disease; diminished capacity evidence properly admitted not as complete defense negating capacity to commit any crime, but as partial defense negating specific mental state essential to particular crime; murder can be reduced to manslaughter not only on statutory basis of provocation, but also on subjective standard of voluntary intoxication or mental impairment]; *People v. Duckett* (1984) 162 Cal.App.3d 1115, 1118–1119, 1126 & fn. 4 [209 Cal.Rptr. 96]

[defendant, a paranoid schizophrenic, believed one victim was the devil and the other a witch, and he heard auditory command hallucinations telling him one victim was going to kill him or have him killed; even though defendant apparently felt he had to kill to protect himself, case was tried only on theory of diminished capacity (and insanity), not on theory of imperfect self-defense]; *People v. Lee* (1979) 92 Cal.App.3d 707, 711–712 [155 Cal.Rptr. 128] [defendant, who killed victim during attempted sexual assault, had delusional system focused on belief people were trying to kill him and victim was part of ambush, so defendant thought he had to protect himself; offense could be no greater than manslaughter under diminished capacity if mental illness precluded defendant from entertaining malice] with imperfect self-defense cases such as *Christian S., supra*, 7 Cal.4th at pp. 772, 784 [minor shot and killed individual whose friends had verbally and physically threatened minor, and who, when shot, was chasing and threatening minor; case remanded for finding whether minor held actual belief of imminent harm]; *Flannel, supra*, 25 Cal.3d at pp. 673–674, 681 [defendant shot and killed victim after victim either pulled a knife or defendant believed he was pulling a knife; manslaughter would have been appropriate verdict]; *Roads v. Superior Court* (1969) 275 Cal.App.2d 593, 595-597 & fn. 2 [80 Cal.Rptr. 169] [victim forced his way into defendant's house and menaced defendant despite warnings defendant would shoot, and when victim lunged at defendant, gun discharged, killing victim; prosecutor's failure to produce sufficient evidence of murder did not necessarily establish justifiable homicide since jury could find manslaughter based on lack of reasonable belief]; *People v. Lewis* (1960) 186 Cal.App.2d 585, 593–594, 598 [9 Cal.Rptr. 263] [defendant struck victim with hatchet in response to assault with firearm; defendant entitled to voluntary manslaughter instructions on imperfect self-defense theory as jury could have found he acted under influence of fear not reasonably justified by circumstances]; *People v. Best* (1936) 13 Cal.App.2d 606, 608–610 [57 P.2d 168] [verbal altercation grew physical and when victim came after defendant, defendant struck him in head, causing fatal blood clot; voluntary manslaughter appropriate where act committed under influence of uncontrollable fear of death or great bodily harm, caused by the circumstances, but such belief unreasonable].)

Even *People v. Wells* (1949) 33 Cal.2d 330 [202 P.2d 53], disapproved on other grounds in *People v. Wetmore, supra*, 22 Cal.3d at pages 323–325 and footnote 5, which represents an early step in the development of both diminished capacity (*Saille, supra*, 54 Cal.3d at p. 1109) and imperfect self-defense (*Christian S., supra*, 7 Cal.4th at p. 776; *Flannel, supra*, 25 Cal.3d at p. 675), involved a belief which, although skewed by mental illness, was nevertheless factually based. In that case, the defendant suffered from a condition in which his body and mind were in a state of high sensitivity to external stimuli, causing him to react abnormally to situations and such stimuli. His threshold of fear was

lower than that of an ordinary person, so that stimuli which would normally not cause fear would cause fear in him. (*People v. Wells, supra*, 33 Cal.2d at pp. 344–345.) Under the circumstances, the California Supreme Court held that he should have been permitted to introduce evidence, against a charge requiring malice aforethought, that because of his abnormal condition he acted not with malice, but under a genuine fear for his safety and a belief he was defending himself from attack. (*Id.* at p. 344.) The court pointed out that if the defendant acted only under fear of bodily harm and in the genuine, although unreasonable, belief he was defending himself against such harm by the use of a necessary amount of force, he would not be guiltless, but also would not be guilty of the crime charged because an essential element—malice aforethought—was lacking. (*Id.* at p. 345.) In *People v. Wells*, however, the defendant was not suffering from a delusion, but from an abnormal reaction to reality.

Diminished capacity was eliminated by the Legislature in 1981[15] and by voter initiative in 1982.[16] (See *Saille, supra*, 54 Cal.3d at pp. 1111–1112.) However, "diminished actuality" remains a viable concept. While the Legislature, in eliminating the diminished capacity defense, "precluded jury consideration of mental disease, defect, or disorder as evidence of a defendant's *capacity* to form a requisite criminal intent, . . . it did not preclude jury consideration of mental condition in deciding whether a defendant *actually* formed the requisite criminal intent." (*People v. Williams* (1997) 16 Cal.4th 635, 677 [66 Cal.Rptr.2d 573, 941 P.2d 752]; see *People v. Coddington* (2000) 23 Cal.4th 529, 583 [97 Cal.Rptr.2d 528, 2 P.3d 1081], overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13 [108 Cal.Rptr.2d 409, 25 P.3d 618]; *People v. Hernandez* (2000) 22 Cal.4th 512, 520 [93 Cal.Rptr.2d 509, 994 P.2d 354].)

■ Even the concept of diminished actuality is circumscribed, however. As the California Supreme Court explained in *Saille*, the law no longer "permits a reduction of what would otherwise be murder to nonstatutory voluntary manslaughter due to voluntary intoxication and/or mental disorder." (*Saille, supra*, 54 Cal.3d at p. 1107, fn. omitted.) *Saille* recognized that sections 25, 28, and 29, while removing a defendant's ability to use evidence of a mental

---

[15] Section 28, subdivision (a) provides in part: "Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state . . . ." Subdivision (b) of the statute states: "As a matter of public policy there shall be no defense of diminished capacity, diminished responsibility, or irresistible impulse in a criminal action . . . ."

[16] Section 25, subdivision (a) states: "The defense of diminished capacity is hereby abolished. In a criminal action, . . . evidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate capacity to form the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged."

disorder to negate the capacity to form a requisite mental state, do permit such evidence on the issue of whether the accused actually formed the required mental state. (*Saille, supra,* 54 Cal.3d at pp. 1111–1112.) Those statutes, however, must be read in conjunction with the definition of malice contained in section 188, which was amended as part of the same legislation that abolished diminished capacity. Section 188, which defines malice vis-à-vis section 187's definition of murder as "the unlawful killing of a human being . . . with malice aforethought" (*id.* subd. (a)), provides:

"Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

"When it is shown that the killing resulted from the intentional doing of an act with express or implied malice as defined above, no other mental state need be shown to establish the mental state of malice aforethought. Neither an awareness of the obligation to act within the general body of laws regulating society nor acting despite such awareness is included within the definition of malice." (§ 188.)

The Supreme Court found that the first sentence of the second paragraph limits malice to the definition contained in section 188, so that "once the trier of fact finds a deliberate intention unlawfully to kill, no other mental state need be shown to establish malice aforethought. Whether a defendant acted with a wanton disregard for human life or with some antisocial motivation is no longer relevant to the issue of express malice. [Citation.]" (*Saille, supra,* 54 Cal.3d at pp. 1113–1114.) Since malice aforethought is established once an intentional unlawful killing is shown, the concept of " 'diminished capacity voluntary manslaughter,' " i.e., nonstatutory manslaughter, is no longer valid.[17] (*Id.* at p. 1114.) Section 192, however, still negates malice when an intentional killing results from a sudden quarrel or heat of passion induced by adequate provocation. (*Saille, supra,* 54 Cal.3d at p. 1114.) In reconciling section 188's definition of malice with the language of sections 22, subdivision (b) and 28, subdivision (a) (which made evidence of voluntary intoxication and mental illness admissible solely on the issue of whether the accused " '*actually formed* a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged' "), the court noted that sections 22 and 28 apply to any crime, whereas section 188 defines malice for purposes of murder. (*Saille, supra,* 54 Cal.3d at pp. 1112, 1115–1116.) "In combination, the statutes

---

[17] The court made clear it was not considering the imperfect-self-defense form of nonstatutory voluntary manslaughter. (*Saille, supra,* 54 Cal.3d at p. 1107, fn. 1.)

provide that voluntary intoxication or mental condition may be considered in deciding whether there was malice as defined in section 188." (*Id.* at p. 1116.) Since section 188 equates express malice with intent unlawfully to kill,[18] a defendant "is still free to show that because of his mental illness or voluntary intoxication, he did not *in fact* form the intent unlawfully to kill (i.e., did not have malice aforethought). [Citation.]" (*Saille, supra,* 54 Cal.3d at p. 1117.)

Since appellant intended to kill Howard, he was not entitled, under *Saille,* to use mental illness to reduce the offense from murder to manslaughter unless he could do so under an imperfect self-defense theory.[19]

■ Despite *Saille*'s reasoning concerning the definition of malice set out in section 188, which would appear to be equally applicable to the imperfect self-defense doctrine (see *Christian S., supra,* 7 Cal.4th at pp. 792–795 (dis. opn. of Lucas, C. J.)), that doctrine remains viable, untouched by the abolition of diminished capacity (*Christian S., supra,* 7 Cal.4th at p. 771). In *Christian S.,* the state Supreme Court found no indication in the 1981 amendments to the Penal Code that the Legislature intended to eliminate imperfect self-defense along with diminished capacity, and it rejected the notion that the two concepts are so closely related that when the Legislature eliminated one, it necessarily also eliminated the other. (7 Cal.4th at pp. 774–778.) The court explained: "The two doctrines relate to the concept of malice, but the similarity ends there. Unlike diminished capacity, imperfect self-defense is not rooted in any notion of mental capacity or awareness of the need to act lawfully. To the contrary, a person may be entirely free of any mental disease, defect, or intoxication and may be fully aware of the need to act lawfully—and thus not have a diminished capacity—but actually, although unreasonably, believe in the need for self-defense. Put simply, an awareness of

---

[18] " 'The adverb "unlawfully" in the express malice definition means simply that there is no justification, excuse, or mitigation for the killing *recognized by the law.* [Citation.]' " (*Saille, supra,* 54 Cal.3d at p. 1115, italics added.)

[19] We recognize that voluntary manslaughter does not require an intent to kill (*People v. Lasko, supra,* 23 Cal.4th at p. 110), and appellant's jury was instructed accordingly. However, in light of undisputed evidence that appellant inflicted on Howard 101 stab wounds (a number of which were potentially fatal), as well as significant blunt force trauma, defense counsel appropriately conceded, in argument to the jury, that appellant intended to kill. Appellant implicitly makes the same concession here. Accordingly, we have no occasion to determine the effect of delusion on imperfect self-defense where the killing involves not an intent to kill, but a conscious disregard for life. (See *People v. Stitely, supra,* 35 Cal.4th at p. 551 [unlawful killing involving intent to kill or conscious disregard for life constitutes voluntary manslaughter when defendant acts upon actual but unreasonable belief in need for self-defense]; *People v. Blakeley* (2000) 23 Cal.4th 82, 88–89 [96 Cal.Rptr.2d 451, 999 P.2d 675]; *Christian S., supra,* 7 Cal.4th at p. 780, fn. 4.) We note, however, that the law does not distinguish between express and implied malice for purposes of voluntary manslaughter based on imperfect self-defense. (See *People v. Blakeley, supra,* at p. 89.) Accordingly, we question whether it logically would distinguish between the mental states of intent to kill and conscious disregard for life where, as here, the issue is the viability of imperfect self-defense based on delusion.

the need to act lawfully does not—in fact or logic—depend on whether the putative victim's belief in the need for self-defense is correct. A person who actually believes in the need for self-defense necessarily believes he is acting lawfully. He is thus aware of the obligation to act lawfully. A defendant could assert one doctrine even though the facts did not support the other. The diminished-capacity defense could be—and often has been—asserted when self-defense was not an issue; and, conversely, imperfect self-defense could be raised when there was no claim of diminished capacity." (*Id.* at pp. 777–778.)

The court further found that imperfect self-defense was not eliminated by the language added to section 188 in 1981. (*Christian S.*, *supra*, 7 Cal.4th at p. 778.) Seemingly contrary to the interpretation given the statutory phrase "deliberate intention unlawfully to take away the life" in *Saille* (see *Saille*, *supra*, 54 Cal.3d at pp. 1114–1115), the *Christian S.* court determined that "unlawfully" modifies "intention" so that the statute requires an intent to act unlawfully, i.e., the defendant must have a wrongful intent. (*Christian S.*, *supra*, 7 Cal.4th at p. 778.)[20] The court noted: "A person who actually believes in the need for self-defense necessarily believes he is acting lawfully." (*Ibid.*) Thus, "[w]hen the trier of fact finds that a defendant killed another person because the defendant actually but unreasonably believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and cannot be convicted of murder." (*Id.* at p. 783.)[21]

■ Although *Christian S.* settled the question of the imperfect self-defense doctrine's viability following the elimination of the diminished capacity defense, neither it nor any subsequent Supreme Court opinion suggests this "narrow" doctrine (*Christian S.*, *supra*, 7 Cal.4th at p. 783) now covers aspects of diminished capacity or diminished actuality not previously included. Thus, imperfect self-defense remains a species of mistake of fact (see *id.* at p. 779, fn. 3); as such, it cannot be founded on delusion. In our view, a mistake of fact is predicated upon a negligent perception of facts, not, as in the case of a delusion, a perception of facts not grounded in reality.[22] A person

---

[20] The *Christian S.* court found no inconsistency with *Saille*. (*Christian S.*, *supra*, 7 Cal.4th at pp. 779–780.)

[21] An actual but unreasonable belief in the need to use deadly force in self-defense is deemed to negate malice essentially because the killer does not have an antisocial motive or evil state of mind. Under the plain language of section 188 as it has existed since 1981, however, when there is intent to kill, no other mental state need be shown to establish malice. Hence, the existence of an antisocial motive or evil state of mind is immaterial.

[22] A delusion is defined as "something that is falsely or delusively believed or propagated . . . as . . . a false conception and persistent belief unconquerable by reason in something that has no existence in fact [or] a false belief regarding the self or persons or objects outside the self that persists despite the facts . . . ." (Webster's 3d New Internat. Dict. (1986) p. 598.)

acting under a delusion is not negligently interpreting actual facts; instead, he or she is out of touch with reality. That may be insanity, but it is not a mistake as to any fact.

At least insofar as general intent crimes are concerned, it is settled that a mistake-of-fact defense, pursuant to section 26, class Three, cannot be predicated upon delusions which are the product of mental illness.[23] (*People v. Castillo* (1987) 193 Cal.App.3d 119, 124–125 [238 Cal.Rptr. 207]; *People v. Gutierrez* (1986) 180 Cal.App.3d 1076, 1083 [225 Cal.Rptr. 885].) We fail to see why the rule should be any different simply because we are considering a specific intent crime or a mistake-of-fact defense under section 188. As noted in *People v. Gutierrez*, a mentally ill defendant who suffers from a delusion may represent a continuing threat and "may be blameworthy to some degree, although perhaps not as much as a completely sane individual. The position of the mentally ill defendant has been accommodated by providing for the NGI [not guilty by reason of insanity] plea, by allowing evidence of mental illness to prove the absence of specific intent, and by permitting consideration of mental illness as a mitigating factor for sentencing purposes." (*People v. Gutierrez, supra*, 180 Cal.App.3d at p. 1084.)

We recognize that *Flannel* states: "No matter how the mistaken assessment is made, an individual cannot genuinely perceive the need to repel imminent peril or bodily injury and simultaneously be aware that society expects conformity to a different standard." (*Flannel, supra*, 25 Cal.3d at p. 679.) In our view, this statement does not render irrelevant the basis of a defendant's actual belief: it relied on the expanded mental component of malice construed and applied in *People v. Conley, supra*, 64 Cal.2d 310, which established the defense of diminished capacity. As the California Supreme Court has since recognized, this portion of *Flannel*'s reasoning is no longer valid due to the abolition of diminished capacity. (*Christian S., supra*, 7 Cal.4th at p. 777.) Moreover, *Flannel* was not dealing with the case of a delusional defendant.

■ We further recognize that section 28 specifically allows evidence of mental illness at the guilt phase of a trial, where relevant to show that the accused did not harbor malice aforethought. This does not assist appellant, however, because, in our view, it does not mean the Legislature has authorized evidence of delusions specifically to support an imperfect self-defense claim.

We reach this conclusion for three reasons. First, our determination that a delusion, unsupported by any basis in reality, cannot sustain an imperfect

---

[23] Section 26 provides in part: "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Three—Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent."

self-defense claim, does not preclude all mentally ill defendants from using evidence of mental illness to assert imperfect self-defense. We are dealing in this case *only* with a mental aberration rising to the level of delusion and a killing which results *solely* from that delusion, and nothing we say should be read any more broadly.

Second, section 28 has no impact on the imperfect self-defense doctrine. The court in *Christian S.* specifically found that the Legislature intended no change in the doctrine of imperfect self-defense when it enacted the 1981 legislation—including section 28—that abolished diminished capacity. (*Christian S., supra,* 7 Cal.4th at p. 775.) Since the cases upon which imperfect self-defense is founded show no intent to have the doctrine apply in situations where there are no facts to support the defendant's belief in the need to use self-defense, our conclusion the doctrine cannot be used by appellant to reduce his offense to voluntary manslaughter merely follows the law that was in effect when *Flannel* was decided. As the Legislature intended no change in that law, section 28 has no effect on the doctrine.

It is true that the legislative history of the 1981 statutory changes states that, following those changes, " 'to reduce murder to manslaughter, *except in the delusional self-defense kinds of cases,* there will have to be a showing of provocation, the traditional basis of manslaughter, to reduce murder to manslaughter.' [Citation.]" (*Christian S., supra,* 7 Cal.4th at p. 781.) This statement does not persuade us that the Legislature intended imperfect self-defense to apply to cases where the defendant's actual belief is unsupported by any factual basis, since the legislative history suggests the Legislature did not focus on the question of imperfect self-defense.[24] (*Id.* at pp. 781–782.)

Third, section 28 is not the only statute that must be taken into account. Section 1016, which permits pleas of, inter alia, not guilty and not guilty by reason of insanity (*id.,* subds. 2, 6), specifies that "[a] defendant who does not plead not guilty by reason of insanity *shall be conclusively presumed to have been sane* at the time of the commission of the offense charged . . . ." (Italics added.) In the present case, of course, appellant did enter pleas of both not guilty and not guilty by reason of insanity. When such is the case, the defendant must first be tried as if only a not guilty plea was entered, "and in that trial the defendant *shall be conclusively presumed to have been sane* at the time the offense is alleged to have been committed . . . ." (§ 1026, subd. (a), italics added.)

---

[24] Indeed, if the word "delusional" were read literally, it could be argued the Legislature meant to eliminate nonstatutory manslaughter in all cases *except* those involving self-defense based on true delusions. Instead, it is apparent the reference is to unreasonable self-defense situations.

 "Although guilt and sanity are separate issues, the evidence as to each may be overlapping." (*People v. Hernandez, supra,* 22 Cal.4th at p. 520.) Thus, in spite of the literal language of section 1020,[25] "at the guilt phase, a defendant may present evidence to show that he or she lacked the mental state required to commit the charged crime. [Citations.]" (*Hernandez,* at p. 520; see *Saille, supra,* 54 Cal.3d at pp. 1111–1112.) A lack of the requisite mental state is not the same, however, as insanity. "A finding of such mental state does not foreclose a finding of insanity. Insanity, under California law, means that at the time the offense was committed, the defendant was incapable of knowing or understanding the nature of his act or of distinguishing right from wrong. [Citations.] [¶] The plea of insanity is thus necessarily one of 'confession and avoidance.' [Citation.] 'Commission of the overt act is conceded' but punishment is avoided 'upon the sole ground that at the time the overt act was committed the defendant was [insane].' [Citation.]" (*Hernandez,* at pp. 520–521, italics omitted.)

 Persons operating under a delusion theoretically are insane since, because of their delusion, they do not know or understand the nature of their act or, if they do, they do not know that it is wrong. By contrast, persons operating under a mistake of fact are reasonable people who have simply made an unreasonable mistake. To allow a true delusion—a false belief with no foundation in fact—to form the basis of an unreasonable-mistake-of-fact defense erroneously mixes the concepts of a normally reasonable person making a genuine but unreasonable mistake of fact (a reasonable person doing an unreasonable thing), and an insane person. Thus, while one who acts on a delusion may argue that he or she did not realize he or she was acting unlawfully as a result of the delusion, he or she may not take a delusional perception and treat it as if it were true for purposes of assessing wrongful intent. In other words, a defendant is not permitted to argue, "The devil was trying to kill me," and have the jury assess reasonableness, justification, or excuse as if the delusion were true, for purposes of evaluating state of mind.

To hold otherwise would undercut the legislative provisions separating guilt from insanity. Allowing a defendant to use delusion as the basis of unreasonable mistake of fact effectively permits him or her to use insanity as a defense without pleading not guilty by reason of insanity, and thus to do indirectly what he or she could not do directly while also avoiding the long-term commitment that may result from an insanity finding. If a defendant is operating under a delusion as the result of mental disease or defect, then the issue is one of insanity, not factual mistake. To allow a mistake-of-fact defense to be based not on a reasonable person standard but instead on

---

[25] Section 1020 provides: "All matters of fact tending to establish a defense other than one specified in the . . . sixth subdivision[] of Section 1016, may be given in evidence under the plea of not guilty."

the standard of a crazy person would undermine the defense that is intended to accommodate the problem.

Appellant asserts that "[a] delusional belief in the need to defend oneself is considered enough evidence to support instructing on imperfect self-defense." Although appellant cites no authority in support of this proposition, our research has uncovered some cases which arguably might be read as buttressing his position. A close examination of several of them, however, reveals the existence of at least *some* facts to support the defendant's actual belief in the need to use deadly force. Thus, for instance, in *People v. Hardin* (2000) 85 Cal.App.4th 625, 631–632 [102 Cal.Rptr.2d 262], the defendant killed an elderly woman after he refused to leave her residence and she threatened him with a hammer. In *DePetris v. Kuykendall* (9th Cir. 2001) 239 F.3d 1057, 1058–1060, the defendant, after suffering years of abuse, killed her husband while he was asleep in bed. In *Seidel v. Merkle* (9th Cir. 1998) 146 F.3d 750, 752, the defendant killed while involved in a fight.

Appellant's claim is not bolstered by the cases we have found in which no such facts seemingly existed. In *People v. Webber* (1991) 228 Cal.App.3d 1146 [279 Cal.Rptr. 437], there apparently was no factual basis to support the defendant's belief that he was going to be the victim of a drive-by shooting and therefore had to shoot into a car traveling on a street next to the vehicle in which he was riding. Although the defendant proffered imperfect self-defense at trial, the issue raised on appeal was whether he was entitled to an instruction on involuntary manslaughter. (*Id.* at pp. 1154–1155, 1160–1165.) As the Court of Appeal had no occasion to determine whether a delusion alone could support an imperfect self-defense claim, the case cannot stand for such a proposition.

In *People v. Uriarte* (1990) 223 Cal.App.3d 192 [272 Cal.Rptr. 693] (upon which appellant relied below), the defendant, who sometimes suffered from hallucinations due to his drug and alcohol abuse, killed his neighbors in the delusional belief they were holding his wife hostage. (*Id.* at pp. 194–196.) On appeal, he contended the trial court erred by refusing to instruct the jury that he was guilty of voluntary manslaughter, not murder, if, as a result of his delusional mental state, he honestly but unreasonably believed the killings were necessary to prevent imminent great bodily injury to his wife. (*Id.* at pp. 196–197.) As the Court of Appeal found insufficient evidence to support the doctrine of imperfect self-defense (*id.* at pp. 197–198), its statement that the defendant's theory for requesting such an instruction was correct (*id.* at p. 197), is dictum. Moreover, it is dictum with which we disagree: the cases which form the basis of the imperfect self-defense doctrine, and which are cited in *Flannel*, state that the defendant's belief must be "caused by the circumstances." (See, e.g., *People v. Lewis, supra*, 186 Cal.App.2d at p. 598;

*People v. Best, supra,* 13 Cal.App.2d at pp. 609–610; see also *People v. Wright, supra,* 35 Cal.4th at pp. 982–984 (conc. opn. of Brown, J.).) When there are no circumstances to support the belief, the doctrine does not apply.

In *People v. Scott* (1983) 146 Cal.App.3d 823 [194 Cal.Rptr. 633], Division Two of the Fourth District Court of Appeal considered a case in which the defendant was convicted of attempted vehicle theft.[26] The defendant was at a party and became involuntarily intoxicated to the point of hallucination after someone spiked the punch. While in this state, he appropriated two vehicles, apparently believing he was a government agent who was trying to save his own life or possibly that of the President. (*Id.* at pp. 826–829.) At trial, the defendant asserted a diminished capacity defense in order to negate the specific intent requirement of the vehicle theft statute. On appeal, the court declined to discuss diminished capacity, finding instead that no crime was committed pursuant to class Three of section 26. The court found the defendant acted under a mistake of fact in that he believed he was a government agent who was acting to protect his own life or that of the President; where mistake of fact is concerned, guilt or innocence is determined as if the facts were as the accused perceived them; had the facts been as the defendant perceived them, his actions would have been legally justified under the doctrine of necessity; and, although the defendant's mistake of fact was irrational, it was reasonable under the circumstances of his having been involuntarily intoxicated with a hallucinogenic substance. (*People v. Scott, supra,* at pp. 831–832.)

The *Scott* court itself has cautioned that the case's holding is limited to the facts presented therein. (*People v. Gutierrez, supra,* 180 Cal.App.3d at p. 1083.) Those facts are not presented here and, whatever the merit of the court's reasoning with regard to those facts, we do not find it applicable to appellant's situation. By appellant's own admission, Howard did not have a knife when appellant started stabbing him.

Courts in other states have held that defendants whose belief in the need to use self-defense stems entirely from mental delusions and paranoia, cannot avail themselves of the doctrine of imperfect self-defense. For example, in *State v. Ordway* (1997) 261 Kan. 776 [934 P.2d 94], the Kansas Supreme Court held that its statutory version of imperfect self-defense, which provides that voluntary manslaughter is the intentional killing of a human being " 'upon an unreasonable but honest belief that circumstances existed that justified deadly force' " (*id.* at p. 100), does not apply "where a defendant raises the defense of insanity, and more specifically, the 'unreasonable but honest belief'

---

[26] Although the defendant originally entered an insanity plea, it was withdrawn, without trial, after he was granted summary probation. (*People v. Scott, supra,* 146 Cal.App.3d at p. 826.)

necessary to support the 'imperfect . . . self-defense manslaughter' cannot be based upon a psychotic delusion." (*Id.* at p. 104.) The court based its conclusion on the absence of any express indication that the Legislature contemplated an unreasonable belief might be based on psychotic delusions, the absence in Kansas case law of any indication that application of imperfect self-defense to cases where the defendant denied criminal responsibility due to mental illness was envisioned, and an Illinois case in which the court interpreted a similar statute as not intending an "unproved insanity defense" to be a mitigating factor in the crime of second degree murder. (*Id.* at pp. 103–104.)

In *Commonwealth v. Sheppard* (1994) 436 Pa.Super. 584 [648 A.2d .563], the court held that trial counsel was not ineffective for failing to assert imperfect self-defense at trial where the defendant's belief in the need for self-defense arose from his paranoid mental state, and there was no objective basis for a subjective, although unreasonable, belief the defendant was in danger and acted in self-defense. (*Id.* at pp. 567, 570.) In so holding, the court interpreted its statutory provision of imperfect self-defense, which states in part that "[a] person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing . . . but his belief is unreasonable." (18 Pa. Cons. Stat. Ann. § 2503(b); *Commonwealth v. Sheppard, supra,* at p. 569.)

In *Peterson v. State of Maryland* (1994) 101 Md.App. 153 [643 A.2d 520], the Maryland appellate court concluded, under Maryland case law establishing that a defendant was guilty of voluntary manslaughter based on imperfect self-defense " 'if the jury concluded that the defendant honestly believed that the use of force was necessary but that this subjective belief was unreasonable under the circumstances,' " that an "imperfect self-defense instruction should not be given unless the evidence generates the issue of whether, under the circumstances, the defendant was entitled to take *some* action against the victim." (*Id.* at p. 522.) The court observed that in every Maryland case holding imperfect self-defense had been shown, the evidence was sufficient to support a reasonable conclusion the defendant was entitled to take some action against the victim. By contrast, in every case holding imperfect self-defense was not shown, the evidence was insufficient to support a reasonable conclusion the defendant was entitled to take any action against the victim. (*Id.* at pp. 522–523.)

In *State v. Seifert* (1990) 155 Wis.2d 53 [454 N.W.2d 346], the Wisconsin Supreme Court, interpreting its imperfect self-defense statute that provides for "imperfect self-defense manslaughter" when a defendant causes death " '[u]nnecessarily, in the exercise of his privilege of self-defense or defense of

others or the privilege to prevent or terminate the commission of a felony,' " held that imperfect self-defense was "never intended to cover situations . . . where it is entirely the defendant's mental disease or defect, not an error in judgment or perception or a negligently-formed perspective of the situation, that motivates the defendant's actions." (*Id.* at pp. 349–350, 352, fn. omitted.) The court explained "that unnecessary or unreasonable acts in the context of imperfect self-defense manslaughter refer to acts resulting from an error in judgment or perception in contrast to the acts of a person of ordinary intelligence and prudence, not to acts resulting from a complete absence of reason and rational thought." (*Id.* at p. 352, fn. 5.) The court concluded that "when a defendant's unlawful actions are totally the product of the defendant's mental illness, the law relieves the defendant of criminal responsibility for those actions" by a "finding of not guilty by reason of mental disease or defect." (*Id.* at p. 353.)

 While the statutory schemes differ in these other states, the reasoning in the cited cases applies with equal force here. That reasonableness is even an issue in determining whether a defendant acted in imperfect self-defense implies the defendant must be able to evaluate the facts as a reasonable person. When a defendant's belief in the need to use self-defense is based entirely on delusions, the defendant does not have a belief based on a reasonable perception of the circumstances. Instead, such a defendant's actions show he or she is entirely incapable of reasoning, comprehending, or judging the nature of the situation. As the courts found in *State v. Ordway, supra,* 934 P.2d 94 and *State v. Seifert, supra,* 454 N.W.2d 346, an unreasonable belief cannot be based on a psychotic delusion.

 In *People v. Tufunga* (1999) 21 Cal.4th 935 [90 Cal.Rptr.2d 143, 987 P.2d 168], the California Supreme Court held it was prohibited from abolishing the claim-of-right defense to robbery because the Legislature codified, in the current robbery statute, the common law recognition that the defense can negate the felonious intent-to-steal element of the crime. (*Id.* at p. 950.) In our view, this case does not stand for the proposition that, because imperfect self-defense is established as a recognized means of raising a reasonable doubt as to the existence of malice, its scope may not be narrowed or diminished except by legislative action. We are aware of no authority showing the Legislature recognized imperfect self-defense as a defense to murder (or means of establishing voluntary manslaughter as a lesser included offense thereto) by incorporating malice into the definition of the crime when it enacted the murder statutes in 1872, or that it otherwise codified the doctrine. To the contrary, the state Supreme Court has recognized that imperfect self-defense is a judicially-developed theory of voluntary manslaughter that is not expressed in the statutory scheme at all. (*People v. Rios, supra,* 23 Cal.4th at p. 465; see *People v. Wright, supra,* 35 Cal.4th at pp. 983–984 (conc. opn. of Brown, J.).) As explained in *Christian S.,* because

malice is a statutory requirement for a murder conviction, the statute required *courts* to determine whether an actual but unreasonable belief in the imminent need for self-defense rose to the level of malice within the statutory definition. (*Christian S., supra,* 7 Cal.4th at pp. 773–774.) Moreover, since we are not eliminating imperfect self-defense, we are not expanding the statutorily defined mens rea of malice. Instead, we find nothing in the language of sections 187 and 188 that suggests the Legislature intended to extend imperfect self-defense claims to defendants whose actual belief in the need to use self-defense is based on a delusion. Therefore, we are free to interpret the doctrine of imperfect self-defense as being inapplicable to such defendants. In so doing, we neither create a new form of manslaughter nor eliminate a form which already exists. (See *People v. Anderson* (2002) 28 Cal.4th 767, 770 [122 Cal.Rptr.2d 587, 50 P.3d 368] ["if a new form of manslaughter is to be created, the Legislature, not this court, should do it"].)

Last, we reject any notion that a rule barring delusion from supporting an imperfect self-claim, if applied to appellant, is unconstitutionally retroactive. We recognize that, in *People v. Blakeley, supra,* 23 Cal.4th at pages 91–92, the California Supreme Court stated that " 'an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates in the same manner as an ex post facto law.' " In that case, the court concluded that an unintentional killing in unreasonable self-defense is voluntary manslaughter, but declined to apply this holding to the defendant because previous appellate decisions had uniformly held that such a killing was only involuntary manslaughter. (*Id.* at pp. 88–89, 92.) Thus, ex post facto principles precluded the. imposition of increased criminal liability to voluntary manslaughter for conduct that at the time was considered to be only involuntary manslaughter.

No similar ex post facto problem exists here. Unlike the situation in *People v. Blakeley, supra,* 23 Cal.4th 82, there is no uniform appellate rule interpreting the doctrine of imperfect self-defense contrary to our holding that said doctrine cannot be based on delusion. Moreover, our opinion does not deprive appellant of an affirmative defense that was available to him at the time he killed Howard. (See *Moss v. Superior Court* (1998) 17 Cal.4th 396, 429–430 [71 Cal.Rptr.2d 215, 950 P.2d 59].)

As imperfect self-defense cannot be based on delusion alone, appellant was not entitled to have jurors instructed to consider evidence of hallucination on the issue of whether appellant killed in the actual but unreasonable belief in the need to defend against imminent peril. Accordingly, the trial court did not err in refusing appellant's request to so modify CALJIC No. 8.73.1.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Cornell, J., and Dawson, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 17, 2006, S141539. Baxter, J., did not participate therein.

---

*See footnote, *ante*, page 1437.