Filed 4/28/15  P. v. Pardo CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066858 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1101087) |
| WILFRIDO PARDO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Bernard Schwartz, Judge.  Affirmed.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Wilfrido Pardo guilty of first degree murder and found true that he personally and intentionally discharged a firearm and caused great bodily injury or death

to another person. The trial court sentenced Pardo to 50 years to life in prison. Pardo appeals, contending (1) substantial evidence did not support the jury's finding of premeditation and deliberation necessary for first degree murder, (2) the trial court committed various instructional errors, and (3) the cumulative instructional errors rendered his trial fundamentally unfair. We conclude Pardo's arguments lack merit and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Pardo and the victim, Janet Rodriguez, were involved in a romantic relationship. Pardo was a methamphetamine dealer and always kept a gun with him. In December 2010, Diane Ortega, one of Pardo's drug buyers, told him that she heard rumors that Rodriguez had spoken to law enforcement.

On a night in mid-December 2010, Pardo, Rodriguez and Eber Rico, Pardo's employee, went to a bar in Mira Loma. While they were at the bar, Pardo and Rodriguez got into an argument. Rodriguez left the bar and Pardo followed her. Rico saw Pardo's BMW vehicle pull away.

The next day, Rodriguez's body was discovered lying on the side of the freeway. Rodriguez's body had multiple gunshot wounds. A crime scene detective observed a blood smear on one of the freeway lanes over 50 feet away from the body.

A forensic pathologist examined Rodriguez's gunshot wounds. Rodriguez had five entrance wounds on her back, one on the back of her skull, one on the left side of her nose, and one on her right hand. Her wounds were consistent with her having been leaning forward against the front passenger side door when she was shot. According to

2

the forensic pathologist, it was unlikely that Rodriguez could have opened the car door because she would have been paralyzed from the neck down as a result of one of the gunshot wounds. Additionally, several gunshot wounds went through Rodriguez's heart and aorta; the forensic pathologist described those wounds as "rapidly fatal wounds."

Rodriguez also had blunt impact injuries, scratches, and abrasions to her face and extremities. These wounds were consistent with Rodriguez having been pushed from a moving vehicle and hitting the asphalt. All of Rodriguez's injuries were inflicted while she was alive or very close to the time of her death.

Officers discovered Pardo's abandoned BMW in Phoenix, Arizona later that month. There were five bullet strikes on the front passenger side door. The investigation also revealed that a bullet had been fired through the front passenger headrest, which proceeded toward the rear right passenger window. Rodriguez's blood was in the vehicle.

Pardo spoke to Ortega on the phone several times after Rodriguez's murder. During one of those calls, Pardo stated he was responsible for the murder. He went on to tell Ortega that he had checked out whether Rodriguez had cooperated with the police and set him up. Pardo told Ortega, "[Rodriguez] had to get taken care of" and "I had to take care of her like they do in Mexico."

Pardo was arrested in May 2012, after returning to the United States from Mexico. During a police interview, he admitted that he was in the United States in 2010. He claimed that in May of that year, Rodriguez had sent people to attack him. He was shot and stabbed.

3

When he was questioned about the night of the shooting, Pardo said he and Rodriguez had been drinking heavily and Rodriguez became jealous of other women when they were dancing. Rodriguez threatened Pardo, stating that she could have him killed. She then ran out of the bar and began making a phone call. As Rodriguez was making the call, Pardo thought she was calling someone to kill him. Pardo said Rodriguez eventually calmed down and he was able to convince her to get into the BMW.

Pardo had a gun behind the front passenger seat where Rodriguez had been sitting. Rodriguez took the gun out when they began arguing in the vehicle while on the freeway. Rodriguez aimed the gun at Pardo and threatened to kill him. Pardo grabbed the gun while he was driving and then they fought for control of it. As they were fighting for the gun, several shots went off. Pardo stated Rodriguez opened the car door and threw herself out.

Pardo claimed the shooting was an accident. He said that he did not intend to shoot Rodriguez and was not angry, drunk or mad when it happened. Further, he said that during the incident, he did not think Rodriguez was going to kill him. Pardo informed officers he had heard Rodriguez was working with the police and was going to turn him in. However, Pardo did not kill Rodriguez for that reason.

*Defense*

Pardo testified on his own behalf. He reiterated many of the same details he previously told officers about the shooting. He also stated that he was scared when Rodriguez pointed the gun at him and thought she was going to kill him. Thus, he slapped the gun and it fired a shot which went through Rodriguez's headrest and out the

4

rear passenger window. Rodriguez and Pardo fought for control over the gun, which Pardo stated fired about five times. During this time, Pardo continued driving and never got control of the gun because he was driving with one hand and trying to get the gun with his other hand. Pardo went on to testify that the shooting was an accident. He could not explain how Rodriguez was able to maneuver her hands such that she was able to shoot herself in the face and five times in the back.

Pardo described Rodriguez as "angry and rebellious against [him]." He also said she was violent towards him on multiple occasions, including the incident where she had sent men to attack him in May 2010. Pardo testified that Rodriguez used methamphetamine, which caused her to become "very aggressive."

As to his state of mind, Pardo testified that during the shooting incident, he was only concerned with driving and defending himself by grabbing the gun away from Rodriguez. He was not thinking about any of the prior fights he had with Rodriguez. When Rodriguez pointed the gun at Pardo and threatened him, Pardo took it seriously and swatted the gun to defend himself.

DISCUSSION

I. *Sufficiency of the Evidence*

Pardo contends his conviction should be reduced to second degree murder because insufficient evidence supports a finding that he committed the murder with the premeditation and deliberation necessary for a first degree murder conviction.

In considering a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains

5

substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. . . . We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. . . . If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. . . . 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" (*People v. Albillar* (2010) 51 Cal.4th 47, 60, citations omitted.)

As the jury was instructed, a conviction for first degree murder in this case required a finding that Pardo intentionally killed Rodriguez with deliberation and premeditation. (Penal Code, § 189; undesignated statutory references are to this code.) In the context of first degree murder, "'[d]eliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.] 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly."'" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)

Our Supreme Court has identified "'"three categories of evidence relevant to resolving the issue of premeditation and deliberation: planning activity, motive, and manner of killing."'" (*People v. Lee* (2011) 51 Cal.4th 620, 636.) However, "[t]hese three categories are merely a framework for appellate review; they need not be present in

6

some special combination or afforded special weight, nor are they exhaustive." (*People v. Booker* (2011) 51 Cal.4th 141, 173.) "'"When evidence of all three categories is not present, 'we require either very strong evidence of planning, or some evidence of motive in conjunction with planning or a deliberate manner of killing.'"'" (*People v. Prince* (2007) 40 Cal.4th 1179, 1253.)

Here, the jury could have reasonably found that Pardo had a motive to kill Rodriguez. The evidence showed Pardo heard rumors that Rodriguez may have been working with law enforcement and setting him up. He told Ortega that "[Rodriguez] had to get taken care of" and "[he] had to take care of her like they do in Mexico." This evidence was sufficient for a motive finding.

The jury could also have reasonably found that Pardo was deliberate in his manner of killing. While there was evidence of a struggle between Pardo and Rodriguez, the evidence also showed Rodriguez was shot five times in the back from close range while leaning forward against the front passenger door. She was also shot in the back of her skull and in the face. Moreover, Rodriguez's wounds were consistent with her having been pushed from a moving vehicle and hitting the asphalt. It was unlikely that she could have opened the car door because she would have been paralyzed from the neck down as a result of one of the gunshot wounds. Pardo did not stop to render Rodriguez aid; instead, he kept driving until he reached Arizona.

While the evidence may have supported a contrary finding, it is not our role to reweigh the evidence where the circumstances reasonably justify the trier of fact's findings. (*People v. Albillar*, *supra*, 51 Cal.4th at p. 60.) Based on the record before us,

7

we conclude there was substantial evidence of premeditation and deliberation. (*People v. Edwards* (1991) 54 Cal.3d 787, 813-814 [A reviewing court will sustain a conviction for first degree murder where there is evidence of a motive to kill coupled with evidence of a manner of killing indicating a preconceived design to kill.].)

## II. *Alleged Instructional Errors*

A. Provocation

Pardo contends the trial court erred by denying his request to instruct the jury with CALCRIM No. 522 regarding provocation.

CALCRIM No. 522 provides "[p]rovocation may reduce a murder from first degree to second degree." This instruction is based on the concept that "'"existence of provocation which is not 'adequate' to reduce the class of the offense [from murder to manslaughter] may nevertheless raise a reasonable doubt that the defendant formed the intent to kill upon, and carried it out after, deliberation and premeditation"'—an inquiry relevant to determining whether the offense is premeditated murder in the first degree, or unpremeditated murder in the second degree." (*People v. Carasi* (2008) 44 Cal.4th 1263, 1306.) The instruction is a "'pinpoint instruction' relating particular evidence to an element of the offense, and therefore need not be given on the court's own motion." (*People v. Rogers* (2006) 39 Ca1.4th 826, 878.) A trial court must give a pinpoint instruction, even when requested, only if it is supported by substantial evidence. (*People v. Marshall* (1997) 15 Cal.4th 1, 39.)

"The test of whether provocation or heat of passion can negate deliberation and premeditation so as to reduce first degree murder to second degree murder, . . . is

subjective." (*People v. Padilla* (2002) 103 Cal.App.4th 675, 678.) "The subjective element requires that the actor be under the actual influence of a strong passion at the time of the homicide." (*People v. Wickersham* (1982) 32 Cal.3d 307, 327.)

Pardo argued a provocation instruction was warranted based on his testimony that he and Rodriguez argued and Rodriguez threatened him and pointed a gun at him. The trial court refused the instruction, noting the evidence did not support a provocation theory as Pardo testified he acted to defend himself.

The record in this case lacks substantial evidence "from which the jury could find that [Pardo's] decision to kill was a direct and immediate response to . . . provocation." (*People v. Fenenbock* (1996) 46 Cal.App.4th 1688, 1705.) To the contrary, during his police interview, Pardo stated the shooting was an accident, he was not angry when it happened, and he did not think Rodriguez was going to kill him. When he testified at trial, Pardo stated during the incident, he was only thinking about driving and defending himself by grabbing the gun. There was no evidence that Pardo was "under the actual influence of a strong passion at the time of the homicide." (*People v. Wickersham*, *supra*, 32 Cal.3d at p. 327.) Based on the evidence, the court properly refused to instruct the jury with CALCRIM No. 522 as it was not supported by substantial evidence.

B. Voluntary Manslaughter Based on Sudden Quarrel or Heat of Passion

Pardo contends the trial court erred by failing to instruct the jury with CALCRIM No. 570 on the lesser included offense of voluntary manslaughter based on a sudden quarrel or in the heat of passion.

9

An intentional killing is reduced from murder to voluntary manslaughter if the evidence negates malice by showing the defendant acted upon a sudden quarrel or in the heat of passion. (§ 192, subd. (a); *People v. Manriquez* (2005) 37 Cal.4th 547, 583 (*Manriquez*).) The factor that distinguishes this type of manslaughter from murder is provocation. (*Manriquez*, at p. 583.) To reduce murder to voluntary manslaughter under section 192, subdivision (a), the provocation may be physical or verbal, but it must be engaged in (or reasonably believed by the defendant to have been engaged in) by the victim, and it must be sufficient to "'cause an ordinary person of average disposition to act rashly or without due deliberation and reflection.'" (*Manriquez*, at pp. 583-584.) The provocation requirement for voluntary manslaughter has both a subjective and an objective component: (1) the defendant must actually and subjectively kill under the impulse of a sudden quarrel or the heat of passion (*id*. at p. 584); and (2) the provocation "'must be such that an average, sober person would be so inflamed that he or she would lose reason and judgment'" (*id*. at pp. 585-586). If either component of provocation is absent, the killing is not voluntary manslaughter under section 192, subdivision (a), and the trial court need not instruct on this type of manslaughter as a lesser included offense of murder. (*Manriquez*, at pp. 585-586.)

"[W]e employ a de novo standard of review and independently determine whether an instruction on the lesser included offense of voluntary manslaughter should have been given." (*Manriquez, supra*, 37 Cal.4th at p. 584.) "Instruction on a lesser included offense is required only when the record contains substantial evidence of the lesser offense, that is, evidence from which the jury could reasonably doubt whether one or

more of the charged offense's elements was proven, but could find all the elements of the included offense proven beyond a reasonable doubt." (*People v. Moore* (2011) 51 Cal.4th 386, 408-409.) In this context, "[s]ubstantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.) To determine whether there was substantial evidence of the lesser included offense, we evaluate the evidence in the light most favorable to the defendant. (*People v. Lucas* (1997) 55 Cal.App.4th 721, 739.)

Here, Pardo and Rodriguez were arguing when Rodriguez threatened Pardo. However, there was no substantial evidence from which the jury reasonably could have found Pardo "'actually, subjectively, kill[ed] under the heat of passion.'" (*People v. Moye* (2009) 47 Cal.4th 537, 554.) Based on his own account of the events and his state of mind, Pardo was not angry during the shooting, the shooting was accidental and he acted in self-defense.

While the court may have a sua sponte duty to instruct on the lesser included offense despite a defendant's claims that the killing was accidental (*People v. Breverman* (1998) 19 Cal.4th 142, 163, fn. 10), "no principle of law require[s] the trial judge . . . disregard all the evidence bearing on defendant's state of mind at the time of the killing in order to find the jury should consider whether he subjectively killed under the heat of passion, when no substantial evidence supported that theory of manslaughter, and the only evidence actually introduced on the point, the defendant's own uncontested testimony, was plainly to the contrary." (*People v. Moye*, *supra*, 47 Cal.4th 537 at p.

11

541.)  "[A]n instruction on heat of passion is [not] required in every case in which the *only* evidence of unreasonable self-defense is the circumstance that a defendant is attacked and consequently fears for his life."  (*Id.* at p. 555.)  Where, as here, the defendant testified he acted deliberately in seeking to defend himself and there is no evidence that he acted rashly or under a heat of passion, the trial court was not required to instruct on voluntary manslaughter based on a sudden quarrel or heat of passion.

C.  Third Party Antecedent Threats

1.  *Additional Background*

Pardo requested that the trial court instruct the jury with CALCRIM No. 571 on imperfect self-defense.  Pardo requested the trial court include an optional paragraph in the instruction regarding threats by third parties.  The optional language provides that "[i]f you find that the defendant received a threat from someone else that (he/she) [reasonably] associated with [the victim], you may consider that threat in evaluating the defendant's beliefs."  (CALCRIM No. 571.)

The court agreed to instruct the jury with CALCRIM No. 571.  The record indicates the instruction was "[g]iven as [r]equested"; however, it did not include the optional paragraph on third party threats.  There is no indication that the court modified the requested instruction.

2.  *Analysis*

Pardo contends the trial court erred by failing to instruct the jury with an optional paragraph concerning threats from third parties in CALCRIM No. 3470, the instruction on the right to self-defense.  The optional paragraph provides that "[i]f you find that the

12

defendant received a threat from someone else that (he/she) reasonably associated with [the victim], you may consider that threat in deciding whether the defendant was justified in acting in [self-defense]."  (CALCRIM No. 3470.)

Pardo did not request that the trial court instruct the jury with CALCRIM No. 3470, including the optional paragraph on third party threats associated with the victim. Thus, the Attorney General contends Pardo's claim of instructional error is forfeited on appeal (*People v. Lee*, *supra*, 51 Cal.4th at p. 638).  Pardo, however, counters that he did not forfeit his claim of instructional error because the optional paragraph of CALCRIM No. 3470 is substantially similar to the optional paragraph in CALCRIM No. 571, which he did request.

Even if Pardo did not forfeit his claim by failing to raise it below, we conclude the alleged error was harmless.  The jury heard evidence that Rodriguez threatened to have Pardo killed.  It also heard evidence that Rodriguez had previously sent people to attack him and he was shot and stabbed as a result.  Although the trial court did not instruct the jury with the optional paragraphs in either CALCRIM Nos. 3470 or 571, the jury heard other instructions which informed jurors that they could consider the threats in evaluating Pardo's defenses.  For example, the version of CALCRIM No. 571 on imperfect self-defense provided to the jury stated, "In evaluating the defendant's beliefs, consider all the circumstances as they were known and appeared to the defendant.  [¶]  If you find that Janet Rodriguez threatened or harmed the defendant or others in the past, you may consider that information in evaluating defendant's beliefs."  Similarly, CALCRIM No. 505 on self-defense informed the jury that it should "consider all the circumstances as

13

they were known to and appeared to the defendant" and it could consider Rodriguez's past threats to Pardo in deciding whether Pardo's conduct and beliefs were reasonable.

Additionally, during closing argument, defense counsel told the jury that it should consider Rodriguez's threats and that she had previously sent people to stab and shoot Pardo in evaluating Pardo's beliefs and conduct. Based on the evidence, defense counsel's closing argument and the instructions provided to the jury, we conclude the alleged error in failing to include optional paragraphs in either CALCRIM Nos. 571 or 3470 regarding threats from third parties was harmless.

D. Victim's Character for Violence

1. *Additional Background*

At trial, Pardo submitted a special instruction entitled, "Instruction Concerning Bad Character of Victim." The instruction stated, "Evidence was received of the [violent] character of the complaining witness. [¶] The purpose of such evidence is to show that it is probable that a person of such character acted in conformity with that character trait during the events constituting this case. [¶] Any conflict in evidence of the complaining witness's character and the weight to be given to such evidence is for you to determine."

The court informed the parties that it was inclined to refuse the special instruction. However, the court stated it would include optional portions of CALCRIM No. 505 (self-defense) pertaining to "defendant being harmed or having knowledge that the victim may have harmed him or others in the past and that the jury could consider that as part and parcel of this self-defense." The court then asked defense counsel if he would like to be further heard on the special instruction. Defense counsel replied, "No, your Honor. I

14

would be in agreement that the Court giving the bracketed instructions as indicated on [CALCRIM No.] 505 should be sufficient."

2. *Analysis*

Pardo contends the trial court erred by refusing his special instruction on the victim's character for violence. We reject Pardo's argument as his counsel conceded at trial that the special instruction was not necessary in light of the court providing the jury with the optional portions of CALCRIM No. 505. Pardo is "not entitled to remain mute at trial and scream foul on appeal." (*People v. Daya* (1994) 29 Cal.App.4th 697, 714.)

Moreover, failure to give Pardo's requested special instruction was not prejudicial in this case. As it stated, the trial court did instruct the jury in CALCRIM No. 505 that "[i]f you find that Janet Rodriguez threatened or harmed the defendant in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable. [¶] If you find that the defendant knew that Janet Rodriguez had threatened or harmed others in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable. [¶] Someone who has been threatened or harmed by a person in the past, is justified in acting more quickly or taking greater self-defense measures against that person." In light of the instructions given, we agree with defense counsel that the special instruction was not necessary. Accordingly, Pardo has not shown prejudicial error.

E. Cumulative Error

Pardo argues the cumulative instructional errors require reversal of his conviction. We find no merit to Pardo's cumulative error contention. As discussed above, the trial

15

court did not commit any error and, even if it did, such errors were harmless individually, as well as cumulatively.

## DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.