Filed 6/1/26  P. v. Torrez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER TORREZ,<br><br>    Defendant and Appellant. | F090478<br><br>(Super. Ct. No. CR-18-009120)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Meghan Cox, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Christopher Torrez was found guilty by a jury of second degree murder. He asserts on appeal his conviction should be reversed because the trial court prejudicially erred in failing to instruct the jury on voluntary manslaughter.

We affirm.

## PROCEDURAL HISTORY

On February 24, 2021, the Stanislaus County District Attorney filed an information charging Torrez with first degree murder of Sonia Gonzalez (Pen. Code, § 187, subd. (a)).[1] The information also alleged Torrez personally used a deadly or dangerous weapon (a knife) (§ 12022, subd. (b)(1)).

On July 9, 2025, the jury found Torrez not guilty of first degree murder, but found him guilty of second degree murder and found the weapon enhancement true. On September 19, 2025, the court sentenced Torrez to 15 years to life on the murder, plus a consecutive one-year term for the weapon enhancement.

Torrez filed a notice of appeal on September 19, 2025.

## FACTUAL SUMMARY

Torrez and Gonzalez dated "on and off" for years and had a volatile relationship. Torrez's mother testified that in the early 2010's, Torrez stabbed Gonzalez in the lung. Torrez was convicted of misdemeanor battery on Gonzalez in 2011 and felony assault on her in 2013. Gonzalez's friend testified she knew Torrez and Gonzalez to have used methamphetamine together, which made them both less rational and made Torrez paranoid, delusional, and mad. She recalled a 2014 incident where Torrez and Gonzalez were "fighting and yelling" at each other around 5:00 a.m. She stated, "it seemed like they were both instigating it kind of." She told them both to leave her house, and Torrez punched her in the face.

---

[1] Undesignated statutory references are to the Penal Code.

In November 2018, Torrez lived at his parents' home in the city of Newman. Torrez's parents knew their son and Gonzalez fought a lot and, based on the nature of the two's relationship, expressly forbade Gonzalez from stepping foot in their home "[m]any, many, many times." However, Gonzalez frequently visited the home anyway.

In the early morning hours of November 21, 2018, Torrez's mother awoke to screaming inside their home. Torrez's father encountered Gonzalez in the kitchen, standing alone, bleeding and holding her stomach. She was upset and mad. Gonzalez said Torrez had stabbed her because she told him she loved him. Torrez's mother called 911 while his father rendered aid to Gonzalez.

Officers arrived to find Gonzalez lying on the kitchen floor and yelling for help; she died moments later. One officer noted blood at the front door, as well as a trail of blood leading to Torrez's bedroom. Torrez's father testified he noticed a knife with blood on it in the sink. Gonzalez had two stab wounds to her left arm, a stab wound to her stomach, and four stab wounds to her chest, among other superficial and defensive wounds.

Officers became aware Torrez was nearby in a white car; one officer got in his patrol car and attempted three high-risk traffic stops to halt Torrez's escape. Torrez eventually stopped and exited his car, saying to officers he did not want to go back to jail. As he was placed in the back of a patrol car, Torrez muttered, "[t]hat's what you get when you talk s[**]t."

## DISCUSSION

### I.    Jury Instruction on Voluntary Manslaughter by Provocation

Torrez asserts the trial court should have instructed the jury on voluntary manslaughter because there was sufficient evidence of provocation based on Torrez acting in the heat of passion. We disagree.

3.

## A.    Standard of Review and Applicable Law

A trial court has a duty to instruct on general principles of law that are " 'closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case.' " (*People v. Moye* (2009) 47 Cal.4th 537, 554.)  "[A] trial court must instruct the jury on a lesser included offense … whenever evidence that the defendant is guilty of only the lesser offense is substantial enough to merit consideration by the jury." (*People v. Choyce* (2025) 18 Cal.5th 86, 104.)  Evidence is substantial in this context if a reasonable jury could find it persuasive.  (*Ibid*.)

We independently review whether the trial court erroneously failed to instruct on a lesser included offense.  (*People v. Wang* (2020) 46 Cal.App.5th 1055, 1069.)  A reviewing court determines only "bare legal sufficiency [of the evidence], not its weight." (*People v. Moye*, *supra*, 47 Cal.4th at p. 556.)

## B.    Analysis

Murder is the "unlawful killing of a human being … with malice aforethought." (§ 187, subd. (a).)  First degree murder requires both malice and premeditation, whereas second degree murder only requires malice.  (§ 189, subds. (a)–(b).)  Courts have long held that provocation can negate premeditation, such that a defendant would only be guilty of second degree murder.  (*People v. Thomas* (1945) 25 Cal.2d 880, 903.)

"Manslaughter is the unlawful killing of a human being without malice," which includes a killing "upon a sudden quarrel or heat of passion." (§ 192, subd. (a).)  Said another way, "an intentional killing is reduced to voluntary manslaughter if other evidence negates malice." (*People v. Lee* (1999) 20 Cal.4th 47, 59.)  Heat of passion "must be affirmatively demonstrated." (*Id*. at p. 60.)  The failure to instruct the jury on voluntary manslaughter, when warranted, implicates both the California and federal Constitutions because evidence of heat of passion bears on an element of the charged offense.  (*People v. Choyce*, *supra*, 18 Cal.5th at p. 104.)

"The heat of passion requirement for manslaughter has both an objective and a subjective component." (*People v. Steele* (2002) 27 Cal.4th 1230, 1252 (*Steele*).)  As to the objective prong, the " 'heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances.' " (*Id*. at pp. 1252–1253.)  Our Supreme Court has stated:

> "One does not act rashly under [this standard] simply by acting imprudently or out of anger.  Even imprudent conduct done while angry is ordinarily the product of some judgment and thought, however fleeting.… [P]rovocation is sufficient not because it affects the quality of one's thought processes but because it eclipses reflection.  A person in this state simply reacts from emotion due to the provocation, without deliberation or judgment.  If an ordinary person of average disposition, under the same circumstances, would also react in this manner, the provocation is adequate …." (*People v. Beltran* (2013) 56 Cal.4th 935, 950.)

Courts have helped define these concepts in more practical terms.  For example:

> "A voluntary manslaughter instruction is unwarranted where the alleged provocation was no more than taunting words, a technical battery, a slight touching, or simple assault.  Engaging in a verbal argument with expletives, together with a 'tussle' involving chest scratching and kicking, also does not rise to the level of provocation necessary to support a voluntary manslaughter instruction." (*People v. Odell* (2023) 92 Cal.App.5th 307, 318.)

Here, there was insufficient evidence to meet the objective test for voluntary manslaughter, and so no jury instruction was warranted.  Torrez did not testify at trial. The evidence of the events on the night of the killing primarily came from Torrez's parents, who:  heard screaming in the early morning hours of the morning; encountered Gonzalez in the kitchen, standing alone, bleeding, and holding her stomach; noted Gonzalez was upset and mad; and relayed Gonzalez's statement that Torrez stabbed her because she told him she loved him.  Additionally, one officer testified that upon arrest, he heard Torrez mumble "[t]hat's what you get when you talk s[**]t."  At best, this evidence implies Torrez was angry over things that would not cause an ordinary person of average disposition to kill as a reaction from emotion due to the provocation, without

deliberation or judgment. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1215–1216 [reminding that, for purposes of voluntary manslaughter, a defendant may not " ' "set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused" ' "]; see also *People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1332 ["If the provocation would not cause an average person to experience deadly passion but it precludes the defendant from subjectively deliberating or premeditating, the crime is second degree murder."].) Even assuming arguendo that, during the yelling and screaming between Torrez and Gonzalez, she taunted Torrez or technically battered him before he stabbed her, these things would still not evidence objective provocation. (*People v. Odell*, *supra*, 92 Cal.App.5th at p. 318 [taunting words, a technical battery, or slight touching insufficient to warrant instruction].) As courts have consistently reaffirmed, " 'the existence of "*any* evidence, no matter how weak" will not justify instructions on a lesser included offense' "; voluntary manslaughter instructions are only required in this context when the evidence is " ' "substantial enough to merit consideration" by the jury.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 623.)

Torrez contends this evidence should be considered in the context of his long, drug-fueled, dysfunctional relationship with Gonzalez, including his prior convictions of battery and assault on her. However, Torrez provides no factually on-point case law to support his contention; in fact, his cited cases indicate the contrary. (See, e.g., *People v. Beltran*, *supra*, 56 Cal.4th at pp. 956–957 [finding "weak and contradicted" the defendant's highlighted evidence that the victim and the defendant argued for being late to a dinner engagement in light of the "strong evidence supporting [the] defendant's murder conviction"].) True, sufficient provocation can "occur over a period of time." (*People v. Wharton* (1991) 53 Cal.3d 522, 569.) However, the events Torrez cites occurred years prior to the killing, such that " ' " 'sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary manslaughter.' " ' " (*People v. Wang*, *supra*, 46 Cal.App.5th at pp. 1069–

1070; see, e.g., *People v. Cole, supra*, 33 Cal.4th at p. 1216 [holding that the record did not warrant voluntary manslaughter instruction on the objective prong where the defendant's and his girlfriend's "bickering, yelling, and cursing were the norm … no different than on the many other occasions on which they had argued in their five-year relationship"].)  Nor would Torrez's previous drug use with Gonzalez support a finding on the objective prong.  (See *Steele, supra*, 27 Cal.4th at p. 1253.)

To the extent Torrez contends a voluntary manslaughter instruction was required because the court gave a provocation instruction distinguishing between first and second degree murder, he is incorrect.  " ' "[T]he existence of provocation which is not 'adequate' to reduce the class of the offense [from murder to manslaughter] may nevertheless raise a reasonable doubt that the defendant formed the intent to kill upon, and carried it out after, deliberation and premeditation." ' " (*People v. Robbins* (2018) 19 Cal.App.5th 660, 673.)  That is because part of "[t]he test of whether provocation or heat of passion can negate malice so as to mitigate murder to voluntary manslaughter is objective"; it considers whether an ordinary person of average disposition, under the same circumstances, would have reacted out of emotion due to the provocation.  (*People v. Padilla* (2002) 103 Cal.App.4th 675, 678.)  On the other hand, "[t]he test of whether provocation or heat of passion can negate deliberation and premeditation so as to reduce first degree murder to second degree murder … is subjective"; it considers whether the provocation actually drove the defendant to kill even if a person of average disposition would not have done so under the circumstances  (*Ibid.*)  As one court commented, the subjective test "inquires whether the defendant in fact committed the act because he was provoked," which "may negate the elements of premeditation, deliberateness and willfulness that are required for [first degree murder]." (*People v. Jones* (2014) 223 Cal.App.4th 995, 1000–1001.)  However, "more is required to reduce malice murder to voluntary manslaughter," i.e., the objective test. (*Ibid.*)  Thus, even accepting that the

7.

subjective element of voluntary manslaughter has been met here, Torrez cannot meet the objective test for the reasons described above.  (*Steele*, *supra*, 27 Cal.4th at p. 1252.)

## DISPOSITION

The judgment is affirmed.


HARRELL, J.

WE CONCUR:


DETJEN, Acting P. J.


FRANSON, J.