Filed 7/9/25  P. v. Hernandez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085995 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF2101116) |
| KEVIN ALFREDO HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Charles J. Koosed, Judge.  Affirmed; remanded with directions.

Ronda G. Norris, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Anastasia Sagorsky, Deputy Attorneys General, for Plaintiff and Respondent.

After a verbal and physical altercation, Appellant Kevin Alfredo Hernandez shot Jose R.  A jury convicted Hernandez of second degree murder.  On appeal, he contends the prosecution failed to adequately prove that he did not act upon sudden heat of passion.  We reject this claim and affirm the judgment.

Hernandez also contends, and the People concede, that a portion of the probation report the trial court ordered stricken remains in the record.  We accept this concession and remand to the trial court with directions to ensure that the appropriate portion of the report is stricken from the record.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of March 13, 2021, Hernandez went to a hookah lounge with his sister-in-law, Aaliyah, and her boyfriend, Jose.  Sometime later, they all went to a liquor store where they purchased bottles of liquor and cans of Dust Off.  The group returned to the hookah lounge parking lot where they continued to drink, and Hernandez and Jose huffed Dust Off to get high.

While sitting in Aaliyah's car, Hernandez and Jose started to argue.  When Jose misplaced the car keys, Hernandez called him a "dumb ass bitch."  In response, Jose told Hernandez that one of Hernandez's "homie[s] spit in [his] face."  Hernandez did not know what Jose was referring to and pointed out that the keys were next to Jose.  During this exchange, Hernandez was standing outside of the car while Jose sat in the backseat.  Aaliyah then realized that her car would not start, so Hernandez gave her his phone to call for help.  As Hernandez handed Aaliyah his phone, he felt a punch to the nose.  Hernandez fell to the ground, and Jose got on top of him.  As Jose "started trying to run" away, Hernandez called out to him and shot him three times.

2

Hernandez fled the scene to a nearby restaurant. The restaurant was located approximately a five- to six-minute walk away from the hookah lounge. He knocked on the door and asked to use the phone, claiming he had an emergency and had lost his phone. The restaurant employee allowed him to enter and use the phone. The employee noted that Hernandez had nice clothes on with a little bit of blood on the front of his shirt. The employee overheard Hernandez's conversation asking someone to pick him up and asked him to wait outside. A different restaurant employee flagged down a police officer who was responding to the call from the scene at the hookah lounge parking lot. She told the police officer she had "just left work and there was a male standing outside" with "blood on him asking for a ride."

While Hernandez was waiting outside the restaurant, the police arrived. When Hernandez saw the police officers, he dropped his fanny pack, with the gun inside, into the bushes. The police officers detained Hernandez and placed him inside the patrol vehicle. Hernandez had blood around his nose, but did not request medical care or have any visible injuries. Meanwhile, Jose was pronounced dead in the hookah lounge parking lot.

At the police station, detectives interviewed Hernandez. The video of the interview was played for the jury. Initially, Hernandez told police he and Aaliyah went to the hookah lounge where he planned to sell ecstasy pills. While there, he was robbed. During the ensuing altercation, the assailant choked him until he lost consciousness. The next thing he remembered was waking up on the floor, "fighting and fighting, and then the shots" going off, and everyone running. Hernandez claimed he did not know the person who robbed, hit and choked him.

After the detective told Hernandez that his story was not supported by video surveillance or witnesses, he provided a different version of events. Hernandez admitted he had not been truthful and explained that he went to the hookah bar with Aaliyah and Jose. He claimed Jose "kept calling [him] . . . a bitch." When Jose misplaced the keys, they traded more insults until Jose punched Hernandez in the face.

After Hernandez fell to the ground, Jose got on top of him and started choking him.[1] He tried to free himself but could not "wiggle out." Hernandez carried a loaded gun in his fanny pack and, while they were struggling, he saw his gun on the ground. Jose and Hernandez were "tossing and turning for that . . . gun." As Jose "started trying to run," Hernandez grabbed the gun and "shot him." He told police that he shot Jose, "[o]n purpose . . . [a]fter [he] had already gotten choked and [his] nose was bleeding, and [he] didn't know what else to do."

The autopsy performed on Jose showed two gunshot wounds to his "right neck, and . . . right chest." A forensic pathologist testified that the absence of gunpowder on Jose's skin was consistent with having been shot from a distance. The pathologist concluded that Jose's cause of death was "multiple gunshot wounds."

## DISCUSSION

### A. *Sufficiency of the Evidence*

Hernandez contends there was insufficient evidence for the jury to find that he committed second degree murder, rather than the lesser included offense of voluntary manslaughter. Specifically, he argues that the People

---

[1] The alleged choking was not seen by any eyewitnesses or surveillance cameras.

4

failed to disprove that he acted in the heat of passion in response to sufficient provocation. We conclude substantial evidence supports the jury's implicit finding that Hernandez did not kill Jose under provocation that would have caused a person of average disposition to act rashly and without due deliberation.

1. *Applicable Legal Principles*

Murder is the unlawful killing of a human being with malice aforethought. (Pen. Code, § 187, subd. (a)[2].) "[S]econd degree murder . . . is 'the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507; see §§ 187, subd. (a) & 189.) " 'A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of . . . voluntary manslaughter.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 153 (*Breverman*), citing § 192.) Voluntary manslaughter is a lesser included offense of murder. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197 ["Lesser included offenses of first degree premeditated murder include second degree murder, voluntary manslaughter, and involuntary manslaughter"]; *Breverman*, at p. 154.)

An intent to unlawfully kill generally constitutes malice. (§ 188.) But a defendant who unlawfully kills in the "heat of passion" lacks malice and is guilty of voluntary manslaughter. (§ 192, subd. (a); see *People v. Lasko* (2000) 23 Cal.4th 101, 109–110.) Provocation distinguishes this form of manslaughter from murder. (*People v. Rangel* (2016) 62 Cal.4th 1192, 1225 (*Rangel*).)

---

2      Subsequent undesignated statutory references are to the Penal Code.

5

" 'To be adequate, the provocation must be one that would cause an emotion so intense that an ordinary person would simply *react*, without reflection. . . . [T]he anger or other passion must be so strong that the defendant's reaction bypassed his thought process to such an extent that judgment could not and did not intervene.' " (*Rangel, supra*, 62 Cal.4th at p. 1225.) " 'The provocative conduct may be physical or verbal, and it may comprise a single incident or numerous incidents over a period of time.' " (*People v. Wright* (2015) 242 Cal.App.4th 1461, 1481 (*Wright*).) "The passion aroused can be anger, rage, or any violent, intense, highly wrought or enthusiastic emotion, except revenge." (*Ibid.*) "[I]f sufficient time has elapsed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter." (*Rangel*, at p. 1225, internal quotation marks omitted.)

Heat of passion can reduce murder to voluntary manslaughter when, "at the time of the killing, defendant's reason was (1) actually obscured as a result of a strong passion; (2) the passion was provoked by the victim's conduct; and (3) the provocation was sufficient to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection, and from this passion rather than from due deliberation or reflection." (*Wright*, *supra*, 242 Cal.App.4th at p. 1481; accord, *People v. Carasi* (2008) 44 Cal.4th 1263, 1306 (*Carasi*).) Accordingly, "both subjectively felt heat of passion and objectively reasonable provocation are needed to negate malice and reduce a murder to" voluntary manslaughter. (*Wright*, at p. 1481.) Whether a defendant killed with malice aforethought (constituting murder) or killed in the heat of passion (constituting voluntary manslaughter) is a factual matter for the jury to decide. (*Id.* at p. 1482.)

6

On review for sufficiency of the evidence supporting a conviction, we must " 'examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.' " (*People v. San Nicolas* (2004) 34 Cal.4th 614, 657–658.) We will not reverse a conviction unless there is no hypothesis upon which sufficient substantial evidence exists to support it. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "The same standard applies when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053; *People v. Maury* (2003) 30 Cal.4th 342, 396 ["An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence"].) "Given this deferential standard of review, a 'defendant bears an enormous burden in claiming there is insufficient evidence' to support a conviction." (*People v. Wear* (2020) 44 Cal.App.5th 1007, 1020.)

2.    *Analysis*

There was substantial evidence at trial from which the jury could reasonably determine that Hernandez did not kill Jose in the heat of passion because of legally sufficient provocation. First, "[i]f enough time passed between the provocation and the killing for a person of average disposition to 'cool off' and regain his or her clear reasoning and judgment, then the killing is not reduced to voluntary manslaughter on this basis." (CALCRIM No. 570; *Rangel, supra*, 62 Cal.4th at p. 1225.) Hernandez told police officers that after the physical altercation, Jose "started trying to run," "started

7

turning," and "was trying to get away" when Hernandez called out to him and shot him three times. Although Hernandez claims he had "intense emotions" after Jose beat him up, there was sufficient time for Jose to walk away from Hernandez to such a distance that he had no gunpowder residue on his body. Specifically, there was time for Jose to move away, and for Hernandez to locate the gun and stand up. Hernandez then called out to Jose before shooting him. (See *People v. Avila* (2009) 46 Cal.4th 680, 706 [attack after confrontation dissipated was not sufficient provocation].) From these circumstances, the jury reasonably could infer that "any passions that may have been aroused upon first [being hit] had cooled so that the killing became an act of revenge or punishment." (*People v. Fenenbock* (1996) 46 Cal.App.4th 1688, 1704; see *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1144 [passion for revenge will not reduce murder to manslaughter]; *People v. Memro* (1995) 11 Cal.4th 786, 863 [jury could have concluded that during the time it took to run 178 feet, defendant considered his options].)

Second, even assuming Hernandez felt subjectively provoked, evidence of the required *objective* component did not compel a finding in Hernandez's favor. (See *People v. Padilla* (2002) 103 Cal.App.4th 675, 679 [subjective evidence of provocation alone "cannot as a matter of law negate malice so as to mitigate murder to voluntary manslaughter"].) Jose's provocative conduct consisted of insults, rehashing a prior incident allegedly involving Hernandez's friend, and punching Hernandez in the face. While a jury could conclude such behavior was difficult to tolerate, a jury could also reasonably conclude that such conduct would not naturally arouse judgment-clouding passion in the mind of an ordinarily reasonable person, particularly when Jose had stopped hitting Hernandez and had already walked away when Hernandez fired the gun. (See *Beltran*, *supra*, 56 Cal.4th at p. 950 ["This

8

passion must be a [v]iolent, intense, high-wrought or enthusiastic emotion" (internal quotation marks omitted)].)

The People presented sufficient evidence from which the jury could conclude that the passions of an ordinarily reasonable person in Hernandez's circumstances would have cooled before the killing, and that such a person also would not have reacted rashly without due deliberation. Accordingly, we will not disturb the jury's verdict finding Hernandez guilty of murder on sufficiency of the evidence grounds.

## B.    *Probation Report*

Hernandez contends, and the People concede, that although the trial court ordered a portion of the probation report stricken from the record, it nonetheless remains in the record. Specifically, the court ordered lines 11 through 16 on page 6 of the probation report be stricken because "that person did not testify . . . and . . . it would be inappropriate to leave that in there as if they did or were impeached." Accordingly, we remand this matter to the superior court with instructions to strike lines 11 through 16 on page 6 of the probation officer's amended sentencing recommendation.

## DISPOSITION

The judgment is affirmed and the matter is remanded to the superior court with instructions to implement the order striking lines 11 through 16 on page 6 of the amended probation report.

DATO, Acting P. J.

WE CONCUR:


BUCHANAN, J.


RUBIN, J.

9